AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>ONE VEHICLE LOCATED IN<br>THE DISTRICT OF COLUBIA<br>UNDER RULE 41 | )<br>)<br>)<br>)<br>)<br>) Case No. 23-sw-209 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the   Jurisdiction of the    District of     Columbia     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1) & 846;<br>18 U.S.C. § 924(c); 18 U.S.C. § 922(g);<br>18 U.S.C. § 922(o); 18 U.S.C. § 922(a);<br>22 D.C. Code § 402; 18 U.S.C. § 1956 | Distribution and Possession with Intent to Distribute Controlled Substances, and Conspiracy Thereof;<br>Possession and Use of a Firearm During a Drug Trafficking Offense;  Unlawful Possession of a<br>Firearm; Unlawful Possession of a Machinegun; Engaging in the Business of Dealing in Firearms<br>without a License; Assault with a Dangerous Weapon; Laundering of Monetary Instruments |

The application is based on these facts:

See Attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Caroline Miller, Investigator
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: _____06/30/2023_____

_____
*Judge's signature*

City and state: _____Washington, D.C._____      G. Michael Harvey, United States Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❒ Original          ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>ONE VEHICLE LOCATED IN<br>THE DISTRICT OF COLUMBIA<br>UNDER RULE 41 | )<br>)<br>)<br>)   Case No.  23-sw-209<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Jurisdiction of the_____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____July 14, 2023_____ *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____G. Michael Harvey_____.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____.

Date and time issued:     _____06/30/2023_____

City and state:     _____Washington, D.C._____          _____
                                                                                                        *Judge's signature*

                                                            G. Michael Harvey, United States Magistrate Judge
                                                            *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 23-sw-209 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

*Vehicle to be searched*

The property to be searched is a 2019 Kia Sportage, bearing Maryland registration 5FH8674, VIN: KNDPMCAC8K7567127 (the "TARGET VEHICLE").



## ATTACHMENT B

### *Property to be seized*

1.        The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1) & 846 (Distribution and Possession with Intent to Distribute Controlled Substances, and Conspiracy Thereof); 18 U.S.C. § 924(c) (Possession and Use of a Firearm During a Drug Trafficking Offense); 18 U.S.C. § 922(g) (Unlawful Possession of a Firearm); 18 U.S.C. § 922(o) (Unlawful Possession of a Machinegun); 18 U.S.C. § 922(a) (Engaging in the Business of Dealing in Firearms without a License); 22 D.C. Code § 402 (Assault with a Dangerous Weapon); and 18 U.S.C. § 1956 (Laundering of Monetary Instruments) (the "TARGET OFFENSES"), by ANTHONY BAILEY, and his co-conspirators (collectively, the "TARGETS") as described in the search warrant affidavit, including, but not limited to:

a) Weapons, including but not limited to revolvers, semi-automatic pistols, rifles and ammunition, ammunition, magazines, switches, bulletproof vests, and firearms-related paraphernalia including, but not limited to, gun-cleaning kits, gun-sights, holsters, receipts and documentation for the purchases of the same, and related firearm paraphernalia, which constitute tools for the commission of the TARGET OFFENSES;

b) Books, records, receipts, notes and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances and the transportation, ordering, purchase, and transfer of firearms and ammunition, which is evidence of the TARGET OFFENSES;

c) Drugs, to include fentanyl, cocaine base, marijuana, and oxycodone (including Percocet); drug paraphernalia; and items used in the sale, transfer, transportation, and packaging of illegal narcotics substances, including scales, butcher paper, boots, luggage, plastic wrap, plastic bags, tape, cigarette papers, pipes, hypodermic needles and syringes, written articles on the use and effects of narcotics, diluents, and cutting agents, which is evidence of the TARGET OFFENSES;

d) Documents related to or memorializing the ordering, purchasing, storage, transportation and sale of controlled substances and/or firearms and firearms-related paraphernalia, including U.S. currency used in the purchase and sale of controlled substances, buy lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records, which is evidence of the TARGET OFFENSES, proceeds of the TARGET OFFENSES, and contain evidence of the TARGET OFFENSES;

e) Photographs, in particular photographs of co-conspirators, assets, firearms, and controlled substances, which constitute evidence of the TARGET OFFENSES;

f) Address and/or telephone books and papers, including computerized or electronic address and/or telephone records reflecting names, addresses, and/or telephone numbers;

2

g) Records, documents, and papers evidencing acquisition, possession, and/or distribution of firearms and/or controlled substances, storage and location of such assets and facilities to safely store and secure such items, such as safes, to include lock boxes, gun safes, and strong boxes;

h) Books, records and information, receipts, bank statements and records, money drafts, letters of credit, money orders and/or cashier's checks, check books, deposit slips, wire transfers and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money made from engaging in the TARGET OFFENSES;

i) Mail matter (all classes), Priority Mail and Priority Mail Express parcels and packaging, FedEx and UPS parcels and packaging, and other correspondence which reflect names and addresses of suspected co-conspirators in the trafficking and mailing of drugs and cash proceeds;

j) Peer-2-peer payment account and transaction records to include Cash App, Venmo, PayPal, Zelle, and any other payment methods;

k) Records of virtual currency/digital asset account records, transactions, wallet addresses/passwords and block chain ledgers;

l) Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched including by example and not limitation, utility and telephone bills, cancelled envelopes, and keys, including the car keys associated with the TARGET VEHICLE described in Attachment A;

3

m) Records and information that constitute evidence of the state of mind of the TARGETS, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation;

n) Records and information that constitute evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the TARGETS about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

2.      Digital devices used in the commission of, or to facilitate, the commission of the TARGET OFFENSES.

3.      For any digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities as described in the search warrant affidavit and above, hereinafter the "Device(s)":

a) Evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

b) Evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

4

c)  Evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

d)  Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

e)  Evidence of the times the Device(s) were used;

f)  Passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

g)  Documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

h)  Records of or information about Internet Protocol addresses used by the Device(s);

i)  Records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.      Routers, modems, and network equipment used to connect computers to the Internet.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF ONE VEHICLE LOCATED IN THE DISTRICT OF COLUMBIA UNDER RULE 41** | **SW No. 23-sw-209** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Investigator Caroline Miller (hereinafter "I" or "your affiant"), of the Metropolitan Police Department ("MPD"), being first duly sworn, hereby depose, and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of applications under Rule 41 of the Federal Rule of Criminal Procedure for warrants to search the following vehicle: one 2019 Kia Sportage, bearing Maryland registration 5FH8674, VIN: KNDPMCAC8K7567127 (the "TARGET VEHICLE").

2.      I am an investigative and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a sworn officer of the Metropolitan Police Department ("MPD") in Washington, D.C. and have been so employed since 2017.

3.      I am currently assigned to the Violent Crime Suppression Division ("VCSD"). During my tenure as a law enforcement officer, I have investigated and assisted with numerous investigations involving firearms- and narcotic-related offenses. I have conducted numerous criminal investigations, interviewed victims, witnesses, and suspects, and have seen criminal cases through the judicial process. I have also authored and assisted with search warrants involving persons, residences, vehicles, electronic devices, and social media accounts. The majority of these investigations have resulted in arrest and/or conviction, and the recovery of illegal contraband such

as firearms and narcotics. Additionally, I have worked closely with confidential informants who provide information about individuals involved in drug trafficking and firearm possession.

4.     Based on my training, experience, and participation in firearms and narcotics investigations, and the training and experience of other law enforcement officers and agents with whom I am working on this investigation, I know that:

a)  Drug traffickers maintain records electronically and in hardcopy – including ledger books, records, receipts, notes, bank and credit card records, money orders, cashier's checks, bus and plane tickets, records indicating the existence of a storage facility, and other records – relating to the importation, manufacture, transport, ordering, sale, and distribution of controlled substances and firearms. Those records are commonly maintained in secure locations to which such traffickers have ready access, such as locations within (i) their residences (including curtilage), (ii) the residences of trusted associates (including family members, friends, and coconspirators), (iii) the places of operation of their drug distribution activities (such as "stash houses" or "safe houses"), (iv) business locations with which the traffickers or their close associates are affiliated, (v) their vehicles, and (vi) other similarly secure storage areas ("secured locations"). Drug traffickers often maintain such evidence for long periods of time.

b)  Drug traffickers routinely conceal in secured locations the proceeds of their transactions, including large quantities of currency, financial instruments, precious metals, jewelry, and other items of value tied to or purchased with such proceeds. Such traffickers often launder their proceeds to disguise the nature and source of those proceeds and to promote their trafficking activities.

c)   Drug traffickers often maintain contraband and instrumentalities related to the activity at secured locations, such as cell phones, firearms and other weapons, ammunition, switches, scales, razors, packaging materials, cutting agents, cooking utensils, blenders, filtration masks, and containers for preparing and storing controlled substances for distribution. Drug traffickers often maintain multiple cell phones, firearms, and other instrumentalities of trafficking in secured locations.

d)   Drug traffickers commonly maintain at secured locations contact information and address books electronically and in hardcopy that reflect names, addresses, and telephone numbers for associates in their illegal organization. As described below, such individuals often utilize cellular telephones, computers, and telephone systems to maintain contact with their associates in their illegal businesses.

e)   Drug traffickers often take photographs of themselves, their associates, their property, and illegal contraband. Such photographs are usually maintained in one or more secured locations, including on cell phones or computers found within such locations.

f)   Sophisticated drug traffickers often use the internet to purchase illicit narcotics and firearms from international and domestic sellers. Those individuals use computers, cellular telephones, and other electronic devices to search for, purchase, and track the shipping status of illicit narcotics via the internet. Those individuals also use virtual currency such as Bitcoins to pay for the illicit narcotics. Evidence of those transactions are found in several places, including virtual wallets, Bitcoin exchanges, Bitcoin wallets, emails, text messages, and other online records. Individuals involved in illicit narcotics transactions over the internet often use

3

internet enabled devices to communicate with other members to facilitate their conspiracy to buy, sell, and distribute narcotics.

5.      Your affiant also knows that drug traffickers use cell phones in furtherance of trafficking, and that the location data associated with those cell phones normally constitutes evidence and leads to evidence of such trafficking. Specifically, your affiant knows that:

a)   Drug traffickers frequently use cellular telephones to further their illegal activities by, among other things, remaining in constant or ready communication with one another without restricting either party to a particular location at which they might be subject to physical surveillance by law enforcement authorities.

b)   Drug traffickers frequently have access to several cellular telephones, and they periodically use newly acquired cellular telephones, all in an effort to avoid detection and to impede law enforcement efforts. Such traffickers also communicate by use of text messaging to discuss types, quantities, and prices of narcotics and firearms, as well as to discuss meeting locations, all in an effort to elude detection and to impede the efforts of law enforcement. Drug dealing is an ongoing process that requires the development, use, and protection of a communications network to facilitate daily narcotics distribution.

c)   To that end, drug traffickers use communication facilities (including cell phones) to further every aspect of their trade. Such traffickers use communication facilities to contact – by way of both voice call and electronic message – suppliers, customers, and coconspirators, all for the purpose of acquiring, storing, transporting, and distributing drugs and/or firearms. Such traffickers also maintain, on their cell phones, records related to drug distribution (e.g., ledgers and notes

4

pertaining to sales), and photographs of drugs and/or guns, paraphernalia, and the instruments of their trade (including firearms).

6.      I base the facts set forth in this affidavit upon my personal knowledge of the investigation, review of documents to include business and bank records and official government records, information obtained from other individuals including law enforcement personnel, and interviews with witnesses who have personal knowledge of the events and circumstances described herein. Because this affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the legal basis for the issuance of a search warrant.

7.      Based on the facts set forth in this affidavit, your affiant submits that there is probable cause to believe that ANTHONY BAILEY, and his co-conspirators (hereafter, the "TARGETS") have committed violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1) & 846 (Distribution and Possession with Intent to Distribute Controlled Substances, and Conspiracy Thereof); 18 U.S.C. § 924(c) (Possession and Use of a Firearm During a Drug Trafficking Offense); 18 U.S.C. § 922(g) (Unlawful Possession of a Firearm); 18 U.S.C. § 922(o) (Unlawful Possession of a Machinegun); 18 U.S.C. § 922(a) (Engaging in the Business of Dealing in Firearms without a License); 22 D.C. Code § 402 (Assault with a Dangerous Weapon); and 18 U.S.C. § 1956 (Laundering of Monetary Instruments) (hereafter, the "TARGET OFFENSES").  There is also probable cause to search the TARGET VEHICLE for evidence, instrumentalities, and fruits of these crimes, as enumerated in Attachment B.

**PROBABLE CAUSE**

8.      Beginning in June 2022 and continuing through present day, VCSD in conjunction with the Bureau of Alcohol, Tobacco, Firearms & Explosives, the Drug Enforcement Administration, the Federal Bureau of Investigation, and the Internal Revenue Service, have been conducting an investigation into the Kennedy Street crew ("Kennedy" or "KDY"). The investigation has revealed that KDY territory consists of 100-1200 blocks of Kennedy Street, NW Washington, D.C., and the surrounding streets. Law enforcement members have identified several commercial businesses, public recreation centers, residences, and day care facilities that are surrounded by prolific "open air" narcotics trafficking markets and incidents of violent crime, to include shootings and homicides.

9.      Law enforcement believes that identified crew members have been engaged in illegal narcotics distribution; specifically, the distribution of fentanyl, crack cocaine, and marijuana. Law enforcement has identified a number of crew members who are believed to have regularly engaged in smuggling large quantities of marijuana on commercial airline flights from California for resale in Washington, D.C. The crew is also believed to be engaged in illegal firearms possession, to include acts of violence with the use of these firearms, in part to facilitate the narcotics trafficking conspiracy. Law enforcement further believes that associated individuals may be involved in the illicit laundering of narcotics-related proceeds.

10.      Specific to this application, on June 15, 2023, a federal grand jury sitting in Washington, D.C. returned a 32-count indictment against 16 KDY members charging a variety of narcotics, firearms, and money laundering offenses. Defendant 15, ANTHONY BAILEY, is named in the first count of this indictment, charging him with conspiring with other KDY crew members to distribute narcotics.

11.     As part of ANTHONY BAILEY's arrest, on June 23, 2023, United States Magistrate Judge G. Michael Harvey of the United States District Court for the District of Columbia issued a court order (Case No. 23-sw-192) authorizing the search of ten residences, and eight vehicles. This court order authorized the seizure of multiple items constituting evidence of the target offenses, including cellular telephones, computers, laptops, tablets, and other electronic storage devices. Your affiant hereby incorporates by reference the June 23, 2023 Affidavit in Support of An Application for a Search Warrant (hereinafter referred to as the "June 23 Affidavit") issued in Case Number 23-sw-192.

12.     On June 26, 2023, at approximately 6:00 am, law enforcement executed the above-described residential search warrant and associated arrest warrant at ANTHONY BAILEY's residence, located at 213 Seaton Place NE. During the execution of the warrant members located four charged members of the conspiracy: ANTONIO BAILEY, Cameron REID, Herman SIGNOU, and ANTHONY BAILEY.

13.     Recovered from the back bedroom where ANTHONY BAILEY was discovered was a loaded black Sig Sauer p320 9mm semiautomatic firearm with sixteen rounds of ammunition. Several electronic devices and a digital scale were also recovered as evidence.

14.     Also recovered from the residence was a set of keys containing a key fob to the TARGET VEHICLE. During physical surveillance of ANTHONY BAILEY and the residence conducted in the preceding weeks in advance of the planned execution of the residential search warrant, ANTHONY BAILEY had been observed coming and going from the residence while utilizing the TARGET VEHICLE on multiple occasions.

15.     In anticipation of executing the above-described warrants and specific to the TARGET VEHICLE, law enforcement conducted physical surveillance of ANTHONY BAILEY

utilizing the TARGET VEHICLE to drive to the open-air drug market in the Kennedy Street corridor on at least one occasion to conduct a suspected drug transaction involving a hand-to-hand exchange between ANTHONY BAILEY and an apparent customer.

16.     In light of the offenses alleged in the indictment, as well as the digital scale recovered from the residence, law enforcement officers summoned K9 officers trained to detect the presence of narcotics to the residence after ANTHONY BAILEY and his co-defendants' arrests. Shortly after arriving, the K9 alerted on the TARGET VEHICLE. The TARGET VEHICLE was then transported to VCSD and held as evidence.

17.     Based on my training and experience into the modus operandi of drug traffickers, including their proclivity to store their product and proceeds in vehicles, as well as the specific circumstances surrounding the identification and subsequent recovery of the TARGET VEHICLE, your affiant submits that there is probable cause to believe that evidence of the TARGET OFFENSES will be discovered in the TARGET VEHICLE.

## <u>CONCLUSION</u>

18.     Based on the foregoing, I submit that there is probable cause to suspect that TARGET VEHICLE will contain evidence of the TARGET OFFENSES.  I thus request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41.

Respectfully Submitted,

_____
Caroline Miller
Investigator
Metropolitan Police Department

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 30, 2023.

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

9